LINDA CLAXTON, CA Bar No. 125729
linda.claxton@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:   213-239-9800
Facsimile:   213-239-9045

Attorneys for Defendant
UFP RIVERSIDE LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVER SALAS MONDRAGON, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UFP RIVERSIDE LLC, a California limited liability company; and DOES 1 through 100,<br><br>Defendants. | Case No. 5:21-cv-2141<br><br>**NOTICE OF REMOVAL**<br><br><br>Complaint Filed: October 5, 2021<br>Trial Date:     None<br>District Judge:   Hon. _____<br>              Courtroom ___, _____<br>Magistrate Judge: Hon.<br>              Courtroom ___, _____ |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT UFP Riverside LLC ("UFP Riverside" or "Defendant"), defendant in the above-titled action, hereby removes this matter to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The grounds for removal are as follows:

**The State Court Action**

1.      On or about October 5, 2021, plaintiff Oliver Salas Mondragon, ("Plaintiff") filed an unverified Complaint in the Superior Court of the State of California, County of Riverside, Case No. CVRI2104543, captioned *Oliver Salas Mondragon, as an individual and on behalf of all others similarly situated vs. UFP Riverside, LLC, a California limited liability company, and DOES 1 through 100,* (the "Action"). On or about December 13, 2021, plaintiff Oliver Salas Mondragon ("Plaintiff") filed a First Amended Class and Representative Action Complaint ("FAC") ") in the Superior Court of the State of California, County of Riverside, Case No. CVRI2104543, captioned *Oliver Salas Mondragon, as an individual and on behalf of all others similarly situated vs. UFP Riverside, LLC, a California limited liability company, and DOES 1 through 100.*

2.      This lawsuit arises from Plaintiff's employment at UFP Riverside. Plaintiff alleges nine causes of action, (1) Failure to pay all overtime wages (Labor Code §§ 204, 510, 558, 1194, 1198); (2) Meal period violations (Labor Code § § 226.7, 512, 558, 1198); (3) Rest period violations (Labor Code § §226.7, 516, 558, 1198); (4) Waiting time penalties (Labor Code § § 201-203); (5) Wage statement violations( Labor Code § 226 et seq.); (6) Unlawful deductions from earned wages (Labor Code § §221-223; (7) Failure to reimburse all necessary business expenditures (Labor Code § §2802, 2804); (8) Unfair competition (Bus and Prof Code § 17200 et seq.; and (9) Civil penalties under the Private Attorneys General Act (Labor Code § 2698 et seq.)

**Compliance with Statutory Requirements**

3.      On November 29, 2021, the Complaint was served on Defendant, upon execution and return of a Notice and Acknowledgment of Receipt. *Declaration of Linda Claxton ("Claxton Decl.")* ¶ 3. Defendant's removal is timely because it is removing this matter within 30 days of Plaintiff's completion of service. 28 U.S.C. § 1446(b).

4.      In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Class Action Complaint, filed in the Superior Court on October 5, 2021, the Notice and Acknowledgment of Receipt for the Summons and Complaint; the Civil Case Cover Sheet; the Certificate of Counsel; the Notice of Department Assignment; the Notice of Case Management Conference; the ADR Packet; Plaintiff's Notice of Posting Jury Fees; Plaintiff's Case Management Statement; the First Amended Complaint ("FAC" or "Complaint") filed on December 13, 2021, and the Notice and Acknowledgment of Receipt for the First Amended Complaint are attached hereto as Exhibit A. Defendant is not aware of any other process, pleadings or orders served on it by Plaintiff.

5.      Pursuant to 28 U.S.C. § 1446(d), Defendant promptly will provide written notice of removal of the Action to Plaintiffs, through their attorneys of record, and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Riverside.

**Intradistrict Assignment**

6.      Plaintiff filed this Action in the Superior Court of California, County of Riverside; therefore, this case may properly be removed to the United States District Court for the Central District of California. 28 U.S.C. § 1441(a).

**THE FEDERAL COURT'S JURISDICTION AND REMOVABILITY PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

7.      On February 18, 2005, the Class Action Fairness Act of 2005 ("CAFA")

was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in amended 28 U.S.C. §§ 1332(d)(3)-(5), none of them are applicable here.

8.     This Court has original jurisdiction over this case under CAFA in that it is a civil action filed as a class action wherein the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and at least one member (if not all) of the class of plaintiffs is a citizen of a state different than Defendant. *See* 28 U.S.C. § 1332(d).

9.     Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Defendant's investigation of its business records.[1] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

10.     Plaintiff expressly brings this action as a class representative "on behalf of himself and all others similarly situated … pursuant to California Code of Civil Procedure § 382." FAC ¶ 1. Therefore, CAFA applies. *See Bodner v. Oreck Direct, LLC,* No. C 0604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Defendant does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

382").

11.     Plaintiff has alleged a class of persons that includes:

a.     The Overtime Class consists of all of Defendant's current and former non-exempt employees in California who worked in excess of 8 hours per day and/or 40 hours per workweek and received Incentive Pay during the same pay period, during the four years plus 178 days immediately preceding the filing of this action through the present.

b.     The Meal Period Class consists of all Defendants' current and former non-exempt employees in California who: (i) worked at least one shift in excess of 5.0 hours without a meal period of at least 30 minutes in duration commencing prior to the conclusion of the fifth hour of work as reflected in their timekeeping records, and who do not have a corresponding meal period premium payment made for such shifts; and/or (ii) worked at least one shift in excess of 10.0 hours without a second meal period of at least 30 minutes in duration commencing prior to the conclusion of the tenth hour of work reflected in their timekeeping records, and who do not have a corresponding meal period premium payment made for such shifts; and/or (iii) earned Incentive Pay and were paid one or more meal period premiums during the same pay period at their base rate of pay, during the four years and 178 days immediately preceding the filing of the Complaint through the present.

c.     The Rest Period Class consists of all Defendants' current and former non-exempt employees in California who worked at least one shift in excess of 3.5 hours, during the four years and 178 days immediately preceding the filing of the Complaint through the present.

d.     The Expense Reimbursement Class consists of all of Defendants' current and former non-exempt employees in California who had a deduction taken from their wages for the cost of uniforms, during the four years plus 178 days immediately preceding the filing of this action through the present.

e.      The Unlawful Deductions Class consists of all of Defendants' current and former employees in California who had a deduction taken from their wages for the cost of their uniforms, during the four years plus 178 days immediately preceding the filing of this action through the present.

f.      The Waiting Time Class consists of all members of the Overtime Class, Meal Period Class, Rest Period Class, and/or Unlawful Deduction Class, and who separated their employment with Defendants during the three years plus 178 days immediately preceding the filing of this action through the present.

g.      The Wage Statement Class consists of all members of the Overtime Class, Meal Period Class, Rest Period Class, and/or Unlawful Deductions Class, who received a wage statement from Defendants at any time during the one year plus 178 days immediately preceding the filing of this action through the present. FAC ¶ 16.

12.     Although Plaintiff's FAC does not allege specifics as to the number of persons who meet the class definition, he alleges the class members are so numerous that joinder of all members would be unfeasible and not practicable and that the class size is estimated to be greater than fifty (50) individuals. FAC ¶ 17. Defendant has undertaken a count and has concluded that there are 377 such persons, and as a result CAFA's exception for classes of fewer than 100 persons does not apply. *See* 28 U.S.C. § 1332(d)(5)(B); *Declaration of Kegan Reiswig ("Reiswig Decl.")* ¶ 9.

13.     Under 28 U.S.C. § 1453(b) of CAFA, "a class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether a defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."  CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign

state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

14.    The putative class members include citizens of the State of California. Plaintiff is a citizen of the State of California. An individual's citizenship is determined by his state of domicile. *Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). An individual is domiciled in the state where he resides and intends to remain indefinitely. *Id.* Intent is measured objectively, based on factors including, among other things, current residence and place of employment or business. *Id.* at 750; *see, e.g., Rubio v. Roman Catholic Bishop of Sacramento,* No. CIV. S-07-0568 WBS GGH, 2007 WL 1576362, at *2-3 (E.D. Cal. May 31, 2007). An individual's domicile does not change until he establishes a new domicile by taking up residence in a new state, with the intent to remain there indefinitely. *Lew,* 797 F.2d at 750.

15.    Here, Plaintiff alleges in his complaint that he "was and currently is, a California resident." FAC ¶ 3.  On this basis alone, the Court should find that Plaintiff is domiciled in California, and thus a California citizen. *See Lam Research Corp. v. Deshmukh,* 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Lowdermilk v. U.S. Bank Nat. Ass'n,* No. 06-592-HA, 2006 WL 4100011, at *1 (D. Or. Aug. 16, 2006), *aff'd,* 479 F.3d 994 (9th Cir. 2007) (current residence in Oregon and previous employment for defendant in Oregon was evidence of Oregon domicile).

16.    Additionally, Plaintiff seeks to represent a series of classes consisting of all hourly and non-exempt employees employed by Defendant in California, including all Defendant's current and former non-exempt employees in California who worked at least 3.5 hours per day and since four years and 178 days immediately preceding the filing of the complaint. *See* FAC ¶ 16.c This putative class logically includes other

California citizens as well.

17.    UFP Riverside is not a citizen of California. "[T]he citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). UFP Riverside was, at the time of the filing of this action, and remains, a Michigan limited liability company. *Declaration of David A. Tutas ("Tutas Decl.")* at ¶ 2. UFP Riverside consists of one member — UFP Western Division, Inc. *Tutas Decl.* ¶ 3.

18.    UFP Western Division, Inc. was at all times incorporated in Michigan and its sole shareholder is UFP Industries. UFP Industries was at all times incorporated in Michigan and its corporate and operational headquarters are located in Grand Rapids, Michigan. UFP Industries "high level" officers direct, control, and coordinate the business operations of UFP Industries, including the operation of UFP Western Division, from its headquarters in Grand Rapids, Michigan. Finally, UFP Industries' core executive and administrative functions are carried out in its headquarters in Michigan, including but not limited to all legal work and analysis, policy-making and decisions, corporate communications (internal and external), advertising and marketing, and computer operations. *Tutas Decl.* ¶ 4.

19.    A corporation shall be deemed to be a citizen of any State where it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities, sometimes called the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010). UFP Western Division, Inc. was at all times incorporated in Michigan and its sole shareholder is UFP Industries. *Ibid*.

20.    UFP Western Division's business operations and executive and administrative functions are controlled from UFP Industries' corporate headquarters in Grand Rapids, Michigan and Windsor, Colorado. *Ibid*.

21.     Therefore, UFP Riverside is a citizen of Michigan, and is clearly not a citizen of California.

22.     Based upon the foregoing, minimal diversity is established because named Plaintiff is a citizen of California and Defendant is a citizen of Michigan.

23.     There are no other defendants whose consent or joinder are required for removal.

24.     Intra-district assignment to the Riverside Division of this Court is proper because the case was originally filed in the California Superior Court in and for the County of Riverside.

## **AMOUNT IN CONTROVERSY**

25.     Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).  The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability."  *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin*, 574 U.S. at 89.  To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims.  *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (emphasis and internal quotation marks omitted).

26.     Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a *prima facie* showing that it is

more likely than not that the amount in controversy exceeds $5 million.  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will actually owe."  *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted).  A "removing defendant is not obligated to 'research, state, and prove plaintiff's claims for damages.'"  *Id.* at 1204-05 (emphasis omitted).  Defendant may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes.  *Arias*, 936 F.3d at 922.  Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts…of California have looked to the statutory maximum…in determining whether the jurisdictional requirements of CAFA have been met."  *Korn,* 536 F. Supp. 2d at 1205.

27.  "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws."  *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020).  If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations.  *See, e.g.*, *Arias*, 936 F.3d at 922.  An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct.  *E.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where. . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws. . .  such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the

allegations. . . that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

28.     Based on Plaintiff's allegations in the FAC, evidence collected by UFP, and UFP's reasonable assumptions concerning violations derived from the allegations in the FAC, the aggregate amount in controversy from the putative class allegations satisfies the jurisdictional threshold.  *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible").  The FAC seeks unpaid overtime wages, other unpaid wages for missed meals and rest breaks, penalties for non-compliant wage statements, untimely payment of wages both during employment and after termination, unpaid reimbursement of business-related expenses, general, special, consequential, and liquidated damages, civil and statutory penalties, restitution, disgorgement of profits, injunctive relief, and reasonable attorneys' fees on eight causes of action brought under a multitude of different labor statutes for each member of the putative class.  *See* FAC. at pp. 19-20 ("Prayer for Relief").

29.     Conservatively, UFP estimates that Plaintiff's Complaint places at least the following amounts in controversy:

a. Unpaid meal period premiums (second cause of action): **$1,854,248**

b. Unpaid rest period premiums (third cause of action): **$3,396,011**

c. Penalties under Labor Code Section 210 and 558: **$1,508,454**

d. Final wages not timely paid (fifth cause of action): **$609,034**

e. Non-compliant wage statements (seventh cause of action):

**$484,550**

    f.  **Estimated amount in controversy: $7,852,297**

    g.  Estimated attorneys' fees (25%): **$1,963,074**

    h.  **Total estimated amount in controversy: $9,815,371**

<u>Plaintiff's Second Cause of Action for Unpaid Meal Period Premiums Places At Least $1,854.248 In Controversy.</u>

30.    Plaintiff's Second Cause of Action seeks premium wages for UFP's alleged failure to provide all legally compliant meal periods, including "timely, 30-minute meal periods before the end of the fifth hour of work" and "with second meal periods on shifts over 10.0 hours.".  FAC ¶¶ 11, 29. Plaintiff also alleges that Defendant failed to pay required meal period premiums. FAC ¶¶ 11, 30.

31.    Plaintiff further alleges that the failure to provide meal period premiums alleged in the Second Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200.  FAC ¶¶ 53-56.  The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

32.    The Complaint does not allege the number of meal periods not provided to Plaintiff or the proposed class members during the statute of limitations period for which premium pay is allegedly due.

33.    Based on a review of Defendant's business records, between October 5, 2017 and October 23, 2021, 377 putative class members worked approximately 194,616 shifts exceeding 5.0 hours in length and 38,798 shifts exceeding 10.0

Mondragon Notice
of Removal.docx

hours in length. (Reiswig Decl. ¶¶ 12-13). These putative class members received a weighted average base hourly rate of $19 .08.  (Reiswig Decl. ¶ 14).

34.     Assuming, *arguendo*, the truth of Plaintiff's allegations, putative class members are entitled to recover at least $1,854.248 for unpaid meal period premium pay, as follows:

a.   assuming a conservative thirty percent (30%) violation rate for missed first meal breaks: $19.08 (weighted average base hourly rate for putative class members during the four-year period) x 194,616 (work shifts over 5 hours worked by putative class during the applicable four-year period) x 30% (assumed violation rate) = $1,113,982;

b.   Assuming a one  hundred percent (100%) violation rate for missed second meal breaks (based on time records reflecting no second meal breaks) $19.08 (weighted average base hourly rate for putative class members during the four-year period) x 38,798 (work shifts over 10 hours worked by putative class during the applicable four-year period) = $740,266.

35.     The foregoing meal period assumptions are well within the range of up to 50-60% generally accepted by this Court as a reasonable conservative assumption when calculating the amount in controversy for CAFA purposes.  *See, e.g., Stanley v. Distribution Alts., Inc.*, No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal., Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate was "conservative"); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (violation rate of 50%); *Mendoza v. Savage Servs. Corp.*,

Case No. 5:21-cv-2141

Mondragon Notice
of Removal.docx

No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal., Mar. 19, 2019) (holding in a case involving the same Plaintiffs' counsel that California district courts "routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums"); *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D. Cal., Feb. 5, 2018) (finding defendant's assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable).  Courts have even found that a plaintiff's allegation of uniform practices alone can be sufficient to permit a defendant to assume that violations of wage laws occurred 100% of the time.  *See e.g., Amaya v. Consolidated Container Co.*, LP, 2015 WL 4574909, *2 (C.D. Cal. July 28, 2015) (allegation of "uniform" illegal practices, combined with no evidence from plaintiff rebutting an assumed 100% violation rate, sufficient proof of violation rates); *Buehler v. Saddle Creek Corp.*, 2015 WL 5618871, *2 (C.D. Cal. September 23, 2015), (holding "[v]iolation rates of 100% may not be patently unreasonable in the event that a plaintiff fails to include fact-specific allegations that would result in a violation rate discernibly smaller than 100%."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 1276539, at *6 (C.D. Cal. Apr. 28, 2015) (100 percent).

36.     Thus, Plaintiff's Second Cause of Action places *at least* **$1,854.248** in controversy, but likely more.

Plaintiff's Third Cause of Action For Unpaid Rest Period Premiums Places At Least $3,396,011 In Controversy.

37.     Plaintiff's Third Cause of Action seeks premium wages for UFP's alleged failure to provide rest breaks or pay rest break premiums for missed rest breaks.  FAC ¶¶ 32-34. Plaintiff alleges that "Defendants failed to authorize and permit Plaintiff and other non-exempt employees from taking legally-compliant rest

periods for shifts in excess of 3.5 hours as Defendants implemented a policy/practice which failed to authorize and permit employees to take an off-duty rest period of at least 10 minutes for every four hours worked, or major fraction thereof. Upon information and belief, throughout Plaintiff's employment with Defendants, Plaintiff was only authorized and permitted to take one (1) rest period prior to his meal period, and Plaintiff was not authorized and permitted a second rest period during work shifts of at least eight (8) hours in duration. Furthermore, despite occasionally working shifts in excess of ten (10) hours, Defendants failed to authorize and permit Plaintiff a third rest period on shifts in excess of ten (10) hours due to Defendants' rest period policies/practices, which fail to authorize and permit non-exempt employees to take a third rest period on occasions when they worked over ten (10) hours in a workday." FAC ¶ 12. Plaintiff further alleges that  Defendant "failed to authorize and permit Plaintiff and members of the Rest Period Class to take all required and legally-compliant rest periods." FAC ¶ 33. Finally, Plaintiff alleges that Defendant failed to pay rest period premium wages when rest periods were not authorized and permitted. FAC ¶ 12, 33.

38.     As with meal periods, Plaintiff further alleges that the failure to provide rest break premiums alleged in the Third Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200.  FAC ¶¶ 53-56.  The statute of limitations for such a claim is four years.  Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

39.     The FAC does not allege the number of rest periods not provided to

Plaintiff or the proposed class members during the statute of limitations period for which premium pay is allegedly due.  Rather, he alleges that no second or third rest breaks were provided.

40.    Based on a review of Defendant's business records, 377 putative class members worked approximately 177,988 shifts over 8.0 hours between October 5, 2017 and October 23, 2021.  (Reiswig Decl. ¶ 12).

41.    Assuming, *arguendo*, the truth of Plaintiff's allegations, putative class members are entitled to recover at least $3,396,011 for unpaid rest break period premium pay, assuming a one hundred percent (100%) violation rate *only for shifts over 8 hours* (instead of on all shifts over 5 hours, which would qualify the putative class members for a second rest break): $19.08 (weighted average base hourly rate for putative class members during the four-year period) x 177,988 (shifts over 8.0 hours worked by putative class during the applicable four-year period) = $3,396,011. Even if one assumes a fifty percent (50%) violation rate for shifts over 5.0 hours, which results in $1,856,637 ($19.08 x 194,616 shifts x .30), the amount in controversy is still met.

42.    Thus, Plaintiff's Third Cause of Action places *at least* **$3,396,011** in controversy.

<u>Plaintiff's Second and Third Causes of Action For Penalties Places Approximately $1,508,454 In Controversy.</u>

43.    Plaintiff alleges that Defendant's failure to provide all legally compliant meal periods and rest breaks create an entitlement to recovery by Plaintiff and the putative class members of all penalties under Labor Code Sections 210 and/or or 558. FAC ¶¶ 29, 32, 34; p. 19 (Prayer for Relief).

44.    Labor Code Section 210 provides for a penalty of $100 for the initial violation and $200 plus 25 percent of the amount  unlawfully withheld. Labor Code Section 588 provides for a penalty of $50 for each initial violation and $100

for each subsequent violation. Labor Code Section 588(a)(1)-(2). The statute of limitations period for these penalty claims is one year.

45.     Based on a review of Defendant's business records, 235 putative class members worked at least 4,963 pay periods between October 5, 2017 and October 23, 2021. (Reiswig Decl. ¶ 18).

46.     Based on Plaintiff's allegations, Labor Code Section 210 penalties amount to **$1,035,654** (235 initial violations x $100 ($2,350); 4,728 (4,963-235) subsequent violations x $200 ($945,600) plus 25% of amount of pay withheld: (.25 x $1,113,982 = $66,554). Labor Code Section 558 penalties amount to **$484,550** (235 initial violations x $50 ($11,750); 4,728 (4,963-235) subsequent violations x $100 ($472,800). This results in total potential penalties of at least **$1,508,454.**

Plaintiff's Fourth Cause of Action For Final Wages Not Timely Paid Places Approximately $609,034 In Controversy.

47.     Plaintiff's Fourth Cause of Action seeks penalties under California Labor Code § 203 for failure to timely pay wages due at termination.  FAC ¶¶ 35-39.  Specifically, Plaintiff alleges that UFP "failed to timely pay Plaintiff and members of the Waiting Time Class all final wages due to them at the time of their separation including, among other things, underpaid earned and overtime wages owed, and meal and rest period premium wages."  FAC ¶ 37.

48.     As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to California Labor Code § 203.  FAC ¶ 38.  An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced.  Cal. Lab. Code § 203.

49.     The applicable statute of limitations for a claim seeking Labor Code

section 203 penalties is three years (from October 5, 2018 to the present).  Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

50.     The Complaint does not allege the number of violations that occurred between October 5, 2018 and the present.  Instead, Plaintiff relies on his other allegations to support his claim that he and the potential class members did not receive all wages owed to them upon termination.  *See* FAC ¶ 35.  If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.

51.     Based on a review of Defendant's business records, at least 133 Putative Class Members were separated from employment on or after October 5, 2018 (the "Separated Putative Class Members"). (Reiswig Decl. ¶15). Based on a review of Defendant's business records, the Separated Putative Class Members worked, on average, 8.6 hours per day. (Reiswig Decl. ¶ 16). This determination was made by analyzing the Separated Putative Class Members' time data, identifying the hours worked by each Separated Putative Class Member, and then calculating the average hours worked per day for the Separated Putative Class Members. *Ibid.* Thus, the Separated Putative Class Members are considered full-time employees.

52.     Assuming, arguendo, the truth of Plaintiff's allegations regarding meal and/or rest break violations, the terminated putative class members are entitled to recover at least $609,034 ($19.08 x 240 hrs (8 hrs/day x 30 days) x 133).

Plaintiff's Fifth Cause of Action For Non-Compliant Wage Statements Places Approximately $484,550 In Controversy.

53.     For his Fifth Cause of Action, Plaintiff alleges that Defendant violated Labor Code Section 226 because it "knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish Plaintiff and the Wage Statement Class with accurate and complete itemized wage statements that included, among other

requirements, all wages earned and all meal and rest period premiums in violation of Labor Code § 226." FAC ¶ 39-41. Section 226 provides for a penalty of at least $50 for the initial pay period in which a violation occurs and at least $100 per employee for each violation in a subsequent pay period, with a maximum aggregate penalty of $4,000 per employee. *See* Cal. Lab. Code § 226(e). Such claims under Section 226 are subject to a one-year limitation period. Cal. Code Civ. Proc. § 340. "Actual damages" incurred by members of the putative class is not presently known. As a result, Defendant calculates the amount in controversy based on the per-pay-period penalty amounts set forth in Cal. Lab. Code § 226(e).

54.     Defendant issued a total of at least 4,963 wage statements to a total of 235 Putative Class Members between October 5, 2020 and October 23, 2021, and no Putative Class Member received more than 28 wage statements during this time period.  (Reiswig Decl. ¶ 18). This determination was made by taking the aggregated time records for the 377 putative class members, identifying each unique Putative Class Member who worked from October 5, 2020 and October 23, 2021, then, for each such Putative Class Member, identifying each biweekly Sunday – Saturday pay period between October 5, 2020 and October 23, 2021 in which that Putative Class Member worked at least one day, and then counting the number of unique pay period worked per Putative Class Member. *Ibid*

55.     Here, Plaintiff alleges a uniform practice of providing deficient wage statements. Thus, under his theory, all wage statements were deficient and the amount in controversy for this claim is **$484,550.** ((235 initial violations * $50) + (4,728 secondary violations (4,963-235 initial violations) * $100)). *See Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645, at *8 (N.D. Cal. May 27, 2014) (calculating wage statement penalties accordingly); *Korn v. Polo Ralph 4 Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (court may assume maximum penalty consistent with plaintiff's allegations for purposes of

amount in controversy).

56.     The total amount in controversy based on paragraphs 30-55 above is approximately **$7,852,297**.

57.     Finally, if successful, Plaintiff is expected to seek statutory attorneys' fees in connection with his claims. *See* generally Complaint, Prayer for Relief. Although UFP Riverside denies that Plaintiff is entitled to any attorneys' fees, where attorneys' fees and costs are provided by statute, the amount of those fees likely to be incurred is also included in the amount in controversy for purposes of diversity jurisdiction. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In similar cases, to determine the amount in controversy, courts "assume plaintiffs are entitled to attorney fees valued at approximately 25%" of the potential recovery. *Ford v. CEC Entm't, Inc.*, No. CV 14- 01420 RS, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014) (assuming 25 percent attorneys' fee in representative action); *see* also *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014); *see generally Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (under the "common fund" approach, the "benchmark award for attorney fees" is 25 percent of the recovery).

58.     Because the potential damages and penalties exceed $7,852,297 for the unpaid wages, break, final wage, and wage statement claims, as stated    above,    the potential attorneys' fees - 25 percent of that amount—comprise an additional **$1,963,074** for purposes of the amount in controversy, for a total of **$9,815,371**.

59.     In short, even when limited only to the claims mentioned above, and based on conservative assumptions about the amount and frequency of alleged unpaid work and break violations, Plaintiff's claims place far more than $5 million in controversy, without considering his claims for unpaid overtime wages, unpaid business expenses and  unlawful deductions from earned wages. Therefore, the amount in controversy requirement is satisfied. *See Guglielmino v. McKee Foods Corp.*, 506

F.3d 696, 700-01 (9th Cir. 2007) (remand denied under preponderance of the evidence standard where defendant's conservative estimates exceeded the requisite amount).

60.     There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

## NOTICE AND SERVICE REQUIREMENTS ARE MET

61.     As required by 28 U.S.C. §1446(b), the original Notice was filed within 30 days after Defendant was first served with a copy of Plaintiff's Summons and Complaint. Defendant removes based on its own information because the Complaint does not state on its face the amount in controversy.

62.     As required by 28 U.S.C. §1446(d), Defendant provided notice of this removal to Plaintiff through his attorneys of record.

63.     As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, in and for the County of Riverside.

64.     In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes the above-action to this Court.

DATED: December 23, 2021          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Linda Claxton
       Linda Claxton

Attorneys for Defendant
UFP RIVERSIDE LLC